Good morning. May it please the court, Jonathan Libby appearing on behalf of the appellant, Lionel Salazar. Your honors, the government essentially argues that the destruction of government documents is a strict liability offense. That all it must prove is that some government documents were destroyed and that the defendant caused their destruction. But that's simply not true. The destruction of government documents is a specific intent crime. So in order to convict Mr. Salazar of causing the destruction of government documents, the government was required to prove that Mr. Salazar had knowledge of the particular documents that were being shredded, that he intended that those particular documents be destroyed, and that he knew it was unlawful to cause the destruction of those documents. Where do you get the contention that the government has to identify each specific document and that it had to prove that your client was aware of each specific document? Well, they have to certainly prove that there was a particular document that was shredded and he intended that document to be shredded. Why a particular? I mean, he knew from the evidence that there were boxes of documents that were not supposed to be shredded and he apparently caused his people who worked under him to shred them anyway. Well, these are particular counts that allege particular instances of shredding on particular dates. Well, there was proof that the shredding occurred by the specified people on the specified dates. That's true. Okay. So that part of it is done. My difficulty with your argument is that it's kind of a catch-22 for the government. And let's say they say, you caused the shredding of 15 passports on November 16th in such and such a place, and everything's very particular and they prove it. And you say, well, you have to demonstrate whose passports they were. But they're shredded and you don't anymore know. I mean, it — When we say particular documents, Your Honor, we're not saying that they have to necessarily prove a particular person's passport by name. But they have to prove that he was aware that a passport was to be shredded and that he intended that passport to be shredded when the passport couldn't otherwise be shredded. And the problem, of course, here, unlike other statutes, it's not necessarily unlawful to shred a government document. But he knew that — I mean, there's evidence that he — there's evidence that he knew that somebody was going to get in trouble for this. I mean, there's evidence that he said that, which shows at least a reasonable jury could conclude that it shows a guilty mind, a knowledge that there was something unlawful about this. Not with — not specifically with respect to these remaining counts. You know, this was all presented as part of a conspiracy charge, and there were also then five substantive counts that were charged. The jury acquitted him of the conspiracy count. They rejected the government's argument on that. They acquitted him of three of the substantive counts. But that doesn't mean we can't use the same evidence. We don't know what their exact thought process was. But all of the evidence could be considered by the jury with respect to these two counts. So any evidence in the record bearing on these two counts is fair game for the government to uphold this conviction. Well, it's certainly fair game for the jury to consider with respect to all counts, absolutely. But when you look at the particular evidence presented with respect to the shredding on these different dates, in Counts 3 and Count 6, there's no evidence presented that he was aware that on those dates, these particular documents or that the particular documents alleged in the indictment were, in fact, to be shredded. And you look at, for example, in Count 6. They allege in Count 6 the I-797 forms were shredded, receipt notices, rejection notices, et cetera. Well, we know from the record that it wasn't unlawful to shred certain I-797 notices, that this happens all the time. Rose Prince, who was the assistant senate director for the records, who explained what the IRS policy was with respect to shredding, made very clear that certain receipt notices could be shredded and that, in fact, someone would have to look at the particular documents to be able to tell if this was a 797 that could be shredded versus one that could not be shredded. The testimony given with respect to Count 6 by Ms. Vo, who, in fact, shredded documents on the alleged date, says she couldn't tell the difference between any of the documents. So she actually does not know if she was shredding documents that it was unlawful to shred. She knows that she shred I-797 notices, but she doesn't know what kind. And unless the government can prove that Mr. Salazar intended that 797 notices that could not otherwise be shredded were shredded, then he couldn't be convicted of the crime. And similarly, in Count 3, Ms. Toll testified that he – that all of the shredding that she did was in buckets that were already there before Mr. Salazar had gotten there. He kind of walked her over to a shredding machine and said, shred documents that are in the mail buckets. The mail buckets, by the way, the testimony from everybody, was that mail buckets were where the shredding was stored, that documents that could normally be shredded were stored. And he simply told her, shred the documents that are supposed to be shredded. That doesn't demonstrate that he intended that government documents that could not otherwise be shredded be shredded. I mean, essentially what the government is saying is, you know, anytime anyone shreds a government document, it's crime. And that's just not the case. It allows people engaging in perfectly lawful conduct to be convicted. And that's certainly not what Congress could have intended when it enacted this law. And I did come across a case – there's very few cases that address this particular statute. I did come across a case from 1887, which I did not cite in the briefs, which addressed the predecessor statute, the identical predecessor statute. It's United States v. DeGroote, D-E-G-R-O-A-T 30F-764, in which the court said the specific intent to destroy a record must be present, and its absence through want of knowledge of the fact that the paper or document destroyed constituted a record, relieves the defendant of any criminal offense under the statute. And it goes on to discuss how the government destroys documents all the time. And if you take what – and essentially the government was arguing in that case what it is here, that it merely needs to prove that government documents were destroyed. And if that's the case, then innocent people are going to go to jail. I read the government's position as being somewhat different than that, which is that giving all inferences in favor of the verdict, there's evidence from which a reasonable finder of fact could have found that your client knew that the documents that were given to be destroyed on those days should not have been destroyed. I think that's their argument. Well, only with respect to generic documents. We don't know what documents were shredded, because these individuals testified. That's different than what you were saying, though. What your quote is, they have to know that they're not supposed to be destroyed, because otherwise, you know, it's okay to destroy things that are ready for the shredder. Well, that's right. But I think their argument is they have proved that he knew that these were not ready for the shredder, that they were to be retained, but he caused them to be destroyed anyway. Well, shredding was taking place at the INS all the time, perfectly lawfully. And the fact that he caused people to shred documents is not in and of itself a crime. I mean, he was lawfully causing people to shred documents. It's responsive to my question, really, which is whether there isn't evidence from which a jury could find that he knew that these were not among the regularly scheduled proper shreds. Well, see, that's the problem. There weren't any regularly scheduled proper shreds. Shredding took place all the time. Well, it did, but it accelerated because, according to this memo that was signed by Salazar, the inter-filing, which was the stuff that was supposed to be filed and not shredded, was a backlog. And the inference is fairly obvious that, from his own words, that they were – and he says he was under orders to do this, but they started shredding the inter-filing, which he knew the inter-filing was not to be shredded, and at an ever-accelerating pace simply because actually doing what they were supposed to be doing would take too much time. Yes, but the government has to prove that this, in fact, was the inter-filing, that it wasn't otherwise lawful to shred. It's a statement in his own words, it says. It's certainly true, Your Honor, that shredding took place that should not have taken place. That's absolutely true. But he knew what was in the inter-filing, too, documents that were not supposed to be shredded. Absolutely, but that doesn't mean that he caused the shredding of any of that on the evidence for these particular counts. Well, but the witnesses for the governor who testified that they were given the buckets, that he gave them the buckets to shred, and then in those buckets were passports and marriage licenses and birth certificates. What about that evidence? Well, in fact, the testimony was not that he had given them the buckets. The testimony was he took her to the shredder, and there were already buckets at the shredder, and said, you know, shred documents. Wasn't there a person, a man, who said that he was given the buckets to give to the woman who was in the shredding room, and those were given to him by Mr. Sellers? With respect to Count 6. With respect to Count 6, yes. Mr. Hula, in fact, had – it wasn't actually buckets. He was transferring – all right. There was documents that were supposed to be shredded, and then there was inter-filing. And they were kept next to each other in the building, and they were labeled under Count 6, the testimony was. The material that was labeled shred, he transferred into boxes, which he then took to Ms. Vo. There was also buckets that were labeled inter-filing, which he transferred into boxes that he then relabeled inter-filing, that he did not take to Ms. Vo. And so the testimony was that he – that Mr. Salazar, in fact, merely directed him to take the documents that were supposed to be And then we have the testimony from Ms. Vo who says, you know, she shredded these documents, and they were 797 forms, but she couldn't tell what types. And we know from the evidence that some types it was lawful to shred. In fact, it was necessary to shred. Counsel, I think we understand your position, and we'll hear from the government. Thank you. We have a little rebuttal time. Good morning, Your Honors. May it please the Court. My name is Wynne Wong. I represent the United States of America. I plan to address Mr. Salazar's arguments. I also plan to go through the essential elements of this crime and demonstrate why the evidence was sufficient to support the jury's verdict. First off, I would like to correct the counsel's statements in two regards regarding factual statements. One, he stated that there is no evidence that this defendant knew in particular what documents were going to be shredded. Now, we assert that, again, he does not need to know that these particular documents were shredded. But I did see in the record that he did admit on two occasions that he did review Ms. Vo's documents, two boxes that she had to shred. He reviewed one box, and it's in ER 1190 and ER 1265. Is that the box that he reviewed and he saw that it shouldn't be shredded, but then he was absent and it was accidentally shredded? Yes. It was one of the two boxes that were being shredded that night. Another point of correction I wanted to make was the other clerk who was helping Ms. Vo, Mr. Hua, H-U-A. He had stated, according to my understanding in the record, that he took boxes labeled shred. I'm sorry, took buckets labeled shred, moved that into a box, put that label of shred onto that box, and likewise did the same for buckets that were labeled inter-filing. And my understanding is he actually took those boxes labeled inter-filing to Ms. Vo to be shredded. There was something to do with the term special search? Yes. That he understood that to mean to shred the inter-filing, not to do the special search to find out, find the file where the document should be filed. Exactly, Your Honor. In his statement, he essentially details why they came up with this code name, special search, to conceal this activity. And they called it special search. I believe it's in the first paragraph of the statement. And he specifically states that the special search was a special code name they came up to describe the destruction of the inter-filing among themselves. And special search within the INS term is a completely different meaning, but this was indeed a code word they had come up with. Your Honor, I disagree with counsel in saying that the government's position is that this is a strict liability offense. It is not. The government's position is that these are the elements of this crime. One, that documents deposited with the public office were destroyed. That's undisputed. Two, that these documents were willfully and unlawfully destroyed. With regard to willfully, it encompasses a couple things. Knowingly and intentionally, that's undisputed. He admits that he ordered his clerks to destroy it. There are two aspects under willfully also. And one is that he had known it to be unlawful. And secondly, that it was done for the purpose of violating a known legal duty. Now, with respect to a known legal duty, this gentleman had a background check. He had a contract that said he was exposed to sensitive information and had to protect that. He had been a naturalized citizen. He knew how important these documents were to folks who were trying to get citizenship or residency status. And he had gone up a series of ladders in promotions. First was a file clerk. Then he was an inspector. He, in fact, inspected the file rooms to make sure that everything was in compliance with standard operating procedure. One big standard operating procedure was that you should never shred or destroy inter-filing. He worked in a secure area. And he was promoted then to senior supervisor. And we have testimony saying that once you make it to that end, you need to know the standard operating procedure. And in order to get that position, you had to demonstrate your knowledge. In terms of unlawfulness, of course, he knew that it was unlawful based upon a couple items of evidence. One, the most powerful, as Your Honors have mentioned, is the statement. It chronologically walks us through the entire event. And he does state in several regards that, you know, this was done for the purposes of concealing things. This was done for the purpose of lowering the backlog, which initially was 90,000. And subsequently they would shred or, quote-unquote, process, as they allege, 4,000 to 6,000 pieces per day. Can I ask you a question? It's totally off the issue, but we hear so many immigration cases. And I'm just wondering, what did the government do to find or to help or reconstitute the files of the people who were pursuing, do whatever, claim citizenship and the victims of this? Your Honor, that's a very good question. Unfortunately, it's out of my area of knowledge or expertise. I simply was charged with this case. But I do understand that they probably have set up phone numbers subsequently for people to call in. I hope that they have taken additional steps. I'd like to address specifically in terms of Salazar's argument, Mr. Salazar's argument, that he had to know that there were particular documents to be destroyed. The government's position is this is simply surplusage. That in the indictment, it lists these documents to give the defendant notice. In no way or shape or form were they reflective of the essential elements of this crime. And certainly in terms of the statute, it does not specify in any way that specific documents need to be destroyed. And with respect to an 1887 case, certainly it's not reflective of the statute as it currently is to this day. With that in mind, Your Honors, if there are no further questions. I don't believe there are. Thank you, Counsel. The government would submit. Thank you, Your Honors. Mr. Whitty, you have some time remaining for rebuttal if you'd like to. Thank you, Your Honor. With respect to the last thing Counsel just said, the de Groot case from 1887 was addressing the identical statute to what is in place today. It was under the revised federal statutes, but it was transferred into the current statute. It's the identical language. So, in fact, I would suggest it's certainly a relevant case for this Court. Also, there was discussion in terms of special searches and that sort of thing. Understand there were two sets of shredding that took place. There was the inter-filing backlog, and then there was this return mail situation. Count 6 took place under the return mail, not inter-filing backlog. That was completely separate. The special searches had nothing to do with the return mail situation, which, as I discussed before, it was perfectly lawful to shred a great deal of return mail. We have that from the Prince testimony. The reason why, again, there needs to be some particularity, it's not merely so that the defendant is put on notice that he has to defend against the destruction of some type of government document. If he has caused the destruction of documents that it was perfectly lawful to shred, then he's not guilty of a crime. And this is why they have to prove the particular documents. Unlike other statutes, which simply have a willfulness requirement, this says willfully and unlawfully. So Congress clearly thought that, you know, yes, government documents can be destroyed, and it's not necessarily a crime. And when one looks at the statute, it speaks in terms of a record, whether any record or proceeding or book or paper or document was shredded. Not that some generic documents were shredded. If we don't know that a particular document was shredded and it wasn't otherwise unlawful to shred it, then he's not guilty of a crime. And with that, unless the Court has questions, I'll submit. Thank you very much. Thank you, Your Honor. Your case just started. You just submitted. We appreciate very much the arguments of both parties.
judges: Graber, Wardlaw, Rawlinson